# EXHIBIT A-1

## MORTGAGE NOTE

August 5, 2021
Palm Springs, New York

**$352,000.00**

**FOR VALUE RECEIVED, PSB NY HOLDINGS LLC,** a New York Limited Liability Company, maintaining its principal office for the transaction of business at 73450 Country Club Drive, SPC 141, Palm Desert CA 92260 ("Maker"), Promises to pay to **LOAN FUNDER LLC, SERIES 22540,** a Delaware Limited Liability Company, or order, at its office at 645 Madison Avenue 19th FL New York NY 10022 ("Lender"), or at such other place as may be designated in writing by the holder of this Note, the principal sum of **THREE HUNDRED FIFTY TWO THOUSAND AND 00/100 ($352,000.00), on August 5, 2022** ("Maturity Date") with interest thereon, payable in arrears, to be computed from the date hereof until said principal sum shall be fully paid on a daily basis and on the basis of a three hundred sixty (360) day year and the actual number of days elapsed, at the rate of **nine and twenty-five hundredths percent (9.25%) per annum.** Maker shall pay to the Lender consecutive monthly installments of interest only commencing on the date hereof for the period from the date hereof through **August 31, 2021** and thereafter in arrears on **October 1, 2021** and on the first day of each and every month thereafter through and until the Maturity Date. **The entire unpaid balance of principal together with accrued interest thereon shall be paid on the Maturity Date. Maker shall direct all monthly payments to Superior Loan Servicing located at 7525 Topanga Canyon Blvd., Canoga Park, CA 91303-1214.**

1.     Default Interest Rate: If the principal balance of this Note shall not be paid at its maturity, or in the Event of a Default as defined in the Mortgage (as hereinafter defined), interest thereon shall thereafter be computed and paid at the rate of twenty-four (24%) percent per annum ("Default Rate"), but in no event in excess of the maximum rate allowed by law to be charged to the Mortgagor.

2.     Default: IT IS HEREBY EXPRESSLY AGREED that the said principal sum and all accrued interest thereon shall become due at the option of the holder of this Note on the happening of any default or event by which, under the terms of the Mortgage, said principal sum may or shall become due and payable; also, that all of the terms, covenants, conditions and agreements contained in said Mortgage are hereby made part of this instrument.

3.     Voluntary Prepayment: The indebtedness evidenced by this Note may be prepaid in whole or in part without penalty upon not less than five (5) days prior written notice to Lender together with payment to Lender of all accrued and unpaid interest, late charges and other sums then due and payable under this Note or the Mortgage.

4.     Late Charge: Notwithstanding any grace period set forth in the Mortgage, Lender may collect a late charge, not to exceed five cents for each dollar of each installment of principal and/or interest or any other sums due under this Note or the Mortgage which is received more than ten (10) days in

1

arrears from its due date, which late charge shall be due and payable with the next payment due under this Note.

5.    Miscellaneous:

(a) Presentment for payment, notice of dishonor, protest and notice of protest are hereby waived.

(b) Payments received by the Lender pursuant to the terms of this Note or any other document or instrument executed and delivered by Maker to the Lender in connection with Maker's obligations to the Lender hereunder (hereinafter collectively referred to as the "Loan Documents") shall be applied in the following manner:  (i) first, to the payment of all expenses, charges, costs and fees incurred by or payable to the Lender and for which Maker is obligated pursuant to the terms of this Note or the other Loan Documents;  (ii) second, to the payment of all interest accrued hereunder through and including the date of such payment; and (iii) third, to the payment of the principal amount of this Note.

(c) Without limiting any other rights that the Lender may have, the Maker hereby authorizes the Lender from time to time to charge any account of the Maker with the Lender for interest or principal or any other sums coming due under this Note or the Mortgage, but if any such charge creates an overdraft in such account, interest, principal and/or any such other sum shall be deemed not to have been paid to the extent of such overdraft, notwithstanding any internal treatment by the Lender to the contrary.

(d) No failure on the part of the Lender to exercise, and no delay in exercising, any right or remedy hereunder, under the Mortgage or the Loan documents shall operate as a waiver thereof; nor shall any single or partial exercise by the Lender of any right or remedy hereunder, under the Mortgage or the Loan Documents preclude any other or further exercise thereof or the exercise of any other right or remedy that the Lender may have under this Note, the Mortgage, the Loan Documents, or applicable law or otherwise.  The receipt by the Lender of payments of interest or principal hereunder or any other sums due hereunder or under the Mortgage or the Loan Documents with knowledge on the part of the Lender of the existence of a default hereunder or under the Mortgage or the Loan Documents shall not be deemed a waiver of such default.  Any payment by the Maker or receipt by the Lender of less than the full amount of interest, principal and/or other sums due hereunder or under the Mortgage or the Loan Documents shall be deemed to be on account of all such interest, principal and other sums and shall be applied against such interest, principal and/or other sums in such manner and order as the Lender shall choose in its sole and absolute discretion.  The rights and remedies provided in this Note, the Mortgage and the Loan Documents are cumulative, not exclusive and are in addition to all others that may be provided by other agreements and documents and applicable law.

2

(e) The Maker hereby further agrees, on demand, to pay, reimburse and satisfy in full any and all expenses that may be paid or incurred by the Lender in the collection of all or any portion of the indebtedness evidenced hereby or the exercise or enforcement of any one or more of the other rights, powers, privileges, and remedies of the Lender hereunder, under the Mortgage or any other instrument executed and delivered in connection herewith, irrespective of the manner or success of any such collection, exercise or enforcement. Any such expenses shall bear interest at the Default Rate from the date the same are incurred by the Lender until repaid to it by the Maker.

(f) The Maker agrees that this Note shall be construed in accordance with and governed by the laws of the State of New York. The Maker further agrees that in any action or proceeding brought by the Lender against the Maker in connection with this Note (i) the Maker and, by its acceptance hereof, the Lender, shall and do hereby waive trial by jury, (ii) service of any summons and complaint or other process in any action or proceeding may be made by registered or certified mail directed to the Maker at its address hereinabove set forth, the Maker hereby waiving personal service thereof, and (iii) within thirty (30) days after such mailing the Maker shall appear or answer to any summons and complaint or other process, and should the Maker fail to appear or answer within said thirty-day period, the Maker shall be deemed in default and judgment may be entered by the Lender against the Maker for the amount as demanded in any summons or complaint or other process so served.

(g) The Maker hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by the Lender arising out of, or in any way connected with, this Note or the Mortgage.

(h) The terms and provisions of this Note are severable and, if any term or provision shall be determined to be superseded, illegal, invalid or otherwise unenforceable in whole or in part pursuant to applicable law by a governmental authority having jurisdiction, such determination shall not in any manner impair or otherwise affect the validity, legality or enforceability of that term or provision in any other jurisdiction or any of the remaining terms and provisions of this Note in any jurisdiction.

(i) In the event of a judgment on this Note, the Maker agrees to pay to the Lender on demand all reasonable costs and expenses incurred by the Lender in satisfying such judgment, including without limitation, reasonable fees and expenses of the Lender's counsel; it being expressly understood that such agreement by the Maker to pay all post-judgment costs and expenses of the Lender is absolute and unconditional and (i) shall survive (and not merge into) the entry of a judgment for amounts owing hereunder, and (ii) shall not be limited regardless of whether this Note is secured or unsecured, and regardless of whether the Lender exercises any available rights or remedies against any collateral for this Note.

3

(j) If the holder of this Note retains legal counsel to collect on this Note or any interest thereon or on any other obligation owed by the Maker on the Note, the Mortgage or the Loan Documents, including but not limited to a foreclosure proceeding or an action on any guaranty, or to defend the lien of the Mortgage or other collateral, then in such event the Maker agrees to additionally pay to the holder of this Note the reasonable fees of the attorney for the Holder hereof which sums shall be included in any judgment of foreclosure or otherwise, and shall be in addition to the recovery of costs, disbursements and allowances otherwise recoverable in such action pursuant to the applicable provisions of New York law.

(k) This Note is secured by a first Mortgage ("Mortgage") made by the Maker to the Lender of even date herewith, covering property in **Queens County, City and State of New York and being commonly known as and by street 721 Shad Creek Road, Broad Channel NY 11693 (Block 15308 Lot 42).**

(l) **PAUL STEPHEN BOYINGTON**, guaranteed payment of the indebtedness referenced in this Note.

(m) Upon receipt of an affidavit of an officer of the Lender as to the loss, theft, destruction, or mutilation of this Note, or any other security document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon cancellation of such Note or other security document, Maker will issue, in lieu thereof, a replacement note or other security document in the same principal amount thereof and otherwise of like tenor.

(n) This Note may not be changed or terminated orally. This Note shall bind the heirs, legal representatives, successors and assigns of the Maker and shall inure to the benefit of the holder hereof and its successors and assigns.

(o) Cross-Default. Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any Affiliate of Borrower to Lender or any Affiliate of Lender, shall, at Lender's option, constitute a default under this Note. The following definitions shall apply to this Section: (a) "Affiliate" means, with respect to any Person, any other Person that is directly or indirectly Controlling, Controlled by or under common Control with, such Person; (b) "Control" and derivative terms means the possession, directly or indirectly, and acting either alone or together with others, of the power or authority to direct or cause the direction of the management, material policies, material business decisions or the affairs of a Person, whether through the ownership of equity securities or interests, by contract or other means; and (c) "Person" means any natural person, business, Corporation, company, and or association, Corporation, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, government authority or other legal entity.

4

(p) <u>Payments Past Maturity</u>. Maker hereby authorizes Lender, at Lender's sole discretion, to instruct Lender's servicer or subservicer to continue accepting payments from Maker past the then original Maturity Date of this Note at the original terms stated herein and in the other Loan Documents. Maker hereby authorizes Lender and its servicer and subservicer to either (i) initiate, and/or continue the initiation of, ACH direct debit transactions from Maker's bank account supplied to Lender or its servicer or subservicer; and/or (ii) otherwise accept monthly payments due and owing on this Note in the form of paper checks or as otherwise agreed by and between Maker and Lender's servicer or subservicer. If the then original Maturity Date of this Note has passed, the continued acceptance of payments by Lender shall be at the sole and absolute discretion of Lender, and Lender shall not be obligated to accept such payments. Lender reserves the right to cease or discontinue acceptance of any such payments from Maker at any time and to pursue all of its available remedies under this Note and the other Loan Documents.

(q) <u>Usury Savings Clause</u>. Notwithstanding any provision herein, the total liability for payments in the nature of interest, if any, shall not exceed the applicable limits imposed by any relevant state or federal interest rate laws. If any payments in the nature of interest at the Default Rate, or other charges made hereunder are held to be in excess of the applicable limits imposed by any applicable state or federal laws, it is agreed that any such amount held to be in excess shall be considered payment of principal and the indebtedness evidenced thereby shall be reduced by such amount, or if such excessive interest exceeds the unpaid principal balance of this Note, such excess shall be refunded to Maker. All sums paid pursuant to this Note, to the extent permitted by applicable law, shall be amortized, prorated, allocated and spread throughout the full term of this Note until payment in full so that the actual rate of interest is uniform throughout the actual term of this Note or does not exceed the maximum lawful rate throughout the entire term of this Note as appropriate.

(r) TERMINATION FEE:  Upon payoff of the Loan Borrower shall pay to the Lender the sum of $0.00 representing a termination fee ("Termination Fee").  Lender shall not issue a discharge of the Mortgage nor will Lender assign the Mortgage unless the Termination Fee has been paid.

**Maker:**
**PSB NY HOLDINGS LLC**
Employer Identification Number: _____

BY: PAUL STEPHEN BOYINGTON, Managing Member

5

TO BE USED ONLY WHEN THE ACKNOWLEDGEMENT IS MADE OUTSIDE NEW YORK STATE

State (or District of Columbia, Territory, or Foreign Country) Of: California
County of Riverside

On the 5th day of  August  in the year 2021, before me, the undersigned, Notary Public in the aforesaid state,  personally appeared,  Paul Stephen Boyington,  personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) (is) (are) subscribed to the within instrument and acknowledged to me that he/ she/ they executed the same in, his/her/ their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

ELIZABETH BONILLA
Notary Public – California
Riverside County
Commission # 2221610
My Comm. Expires Dec 10, 2021

Notary Public
Notary Expires: 12/10/2021

5

# EXHIBIT A-2



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2021100700810002002E56B4

## RECORDING AND ENDORSEMENT COVER PAGE     PAGE 1 OF 24

| | | |
|---|---|---|
| Document ID: 2021100700810002 | Document Date: 08-05-2021 | Preparation Date: 10-15-2021 |
| Document Type: MORTGAGE | | |
| Document Page Count: 23 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| CHOICE ABSTRACT<br>202 WEST 40TH STREET, SUITE 902<br>CACQ25872<br>NEW YORK, NY 10018<br>212-391-0800<br>GIO@CHOICEFAMILY.COM | CHOICE ABSTRACT<br>202 WEST 40TH STREET, SUITE 902<br>CACQ25872<br>NEW YORK, NY 10018<br>212-391-0800<br>GIO@CHOICEFAMILY.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 15308 | 42 | Entire Lot | 721 SHAD CREEK ROAD |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN_____  or  DocumentID_____  or  _____ Year____ Reel____ Page____  or  File Number_____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| PSB NY HOLDINGS LLC<br>73450 COUNTRY CLUB DRIVE. SPC 141<br>PALM DESERT, CA 92260 | LOAN FUNDER LLC, SERIES 22540<br>645 MADISON AVENUE, 19TH FLOOR<br>NEW YORK, NY 10022 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 352,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 352,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,760.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 3,520.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 880.00 | RECORDED OR FILED IN THE OFFICE | | |
| MTA: | $ | 1,026.00 | OF THE CITY REGISTER OF THE | | |
| NYCTA: | $ | 0.00 | CITY OF NEW YORK | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed     10-19-2021 09:03 | | |
| TOTAL: | $ | 7,186.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 152.00 | 2021000410435 | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M Hill*

*City Register Official Signature*

First Mortgage, Security Agreement and
Assignment of Rents and Leases

Between

PSB NY HOLDINGS LLC

("Mortgagor")

And

LOAN FUNDER LLC, SERIES 22540

("Mortgagee")

Queens County, City and State of New York
721 Shad Creek Road, Broad Channel NY 11693
(Block 15308 Lot 42)

### RECORD AND RETURN

**ROC Capital**
645 Madison Avenue 19th FL
New York NY 10022

## FIRST MORTGAGE, SECURITY AGREEMENT
## AND ASSIGNMENT OF RENTS AND LEASES

THIS FIRST MORTGAGE, SECURITY AGREEMENT and ASSIGNMENT OF RENTS AND LEASES ("Mortgage"), made **August 5, 2021** between **PSB NY HOLDINGS LLC**, a New York Limited Liability Company, having an office at 73450 Country Club Drive, SPC 141, Palm Desert CA 92260 ("Mortgagor") and **LOAN FUNDER LLC, SERIES 22540**, a Delaware Limited Liability Company, having an office at 645 Madison Avenue 19th FL New York NY 10022 ("Mortgagee"),

WITNESSETH, that to secure the payment of an indebtedness in the sum of **THREE HUNDRED FIFTY TWO THOUSAND AND 00/100 ($352,000.00)**, lawful money of the United States, or so much thereof as may be advanced, to be paid according to a certain bond, note or obligation bearing even date herewith (such instrument, as the same may be hereafter amended, modified or extended, being hereinafter called the "Note") and to secure the payment of interest and any other sums payable pursuant to the Note or this Mortgage and the performance and observance of all the provisions of the Note, and this Mortgage, the Mortgagor hereby mortgages to the Mortgagee:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected or to be erected (hereinafter called the "Premises"), commonly known as street **721 Shad Creek Road, Broad Channel NY 11693 (Block 15308 Lot 42)** and more particularly bounded and described in Schedule A annexed hereto and made a part hereof;

TOGETHER with all right, title and interest, if any, of the Mortgagor of, in and to the land lying in the streets, roads or avenues, open or proposed, in front of and adjoining the Premises and of, in and to any strips or gores of land adjoining the Premises;

TOGETHER, ALSO, with all fixtures, chattels and articles of personal property now owned, or the ownership of which is hereafter acquired, and now or hereafter situated on the Premises attached to or located in or upon the Premises, and used or usable in connection with any present or future operation or letting of the Premises or the activities at any time conducted therein (hereinafter called "Building Equipment"), including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other machinery, appliances, fittings, furniture, furnishings and fixtures of every kind used or to be used in the operation of the buildings standing or hereafter erected on the Premises, whether now or hereafter owned, or the ownership of which is hereafter acquired, together with any and all replacements thereof and additions thereto, and all right, title and interest of the Mortgagor in and to any Building Equipment which may be subject to any security agreements, as defined in subdivision (1)(1) of Section 9-102 of the Uniform Commercial Code of the State of New York (hereinafter called "Security Agreements"), superior in lien to the lien of this Mortgage; it being understood and agreed that all Building Equipment is part and parcel of the Premises and appropriated to the use thereof and, whether affixed or annexed to the Premises or not, shall, for the purpose of this Mortgage, be deemed conclusively to be real estate and mortgaged hereby; and the Mortgagor agrees to

2

execute and deliver, from time to time, such further instruments (including further Security Agreements) as may be requested by the Mortgagee to confirm the lien of this Mortgage on any Building Equipment;

TOGETHER, ALSO, with any and all awards, including interest thereon, heretofore and hereafter made to the Mortgagor for the taking by eminent domain of the whole or any part of the Premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the Mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the Mortgagor hereby agrees, upon request, to make, execute and deliver any and all instruments sufficient for the purpose of confirming such assignment of said awards to the Mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever;

TOGETHER, ALSO, with all the Mortgagor's interest in all agreements, contracts, certificates, instruments and other documents, now or hereafter entered into, pertaining to the construction, operation or management of any structure or building now or hereafter erected on the Premises;

TOGETHER, ALSO, with all the Mortgagor's interest in all franchises, permits, licenses and rights therein and thereto respecting the use, occupation or operation of the Premises;

TOGETHER, ALSO, with all the Mortgagor's interest in all easements, rights-of-way, and appurtenances whatsoever in any way belonging, relating or appurtenant to the Premises, whether now owned or hereafter acquired by Mortgagor;

TOGETHER, ALSO, with all of the Mortgagor's interest in all unearned premiums accrued, accruing or to accrue under any and all insurance policies affecting the Premises and all insurance proceeds paid or payable with respect to the Premises;

TOGETHER, ALSO, with all of the Mortgagor's interest in all contract rights, security deposits, tradenames, trademarks, franchises, warranties, refunds or rebates of taxes or assessments upon the Premises, whether paid or to be paid, and other intangible property owned by the Mortgagor and used or useful in connection with the operation, use and occupancy of the Premises;

TOGETHER, ALSO, with the Mortgagor's rights further to encumber the Premises for debt.

AND the Mortgagor covenants with the Mortgagee as follows:

1.      That the Mortgagor will pay the indebtedness as hereinbefore provided.

2.      a)      That the Mortgagor, at its sole cost and expense, shall maintain the following insurance:

        (i)      Insurance on any building and any other improvements covered by the lien of this Mortgage (hereinafter sometimes collectively referred to as the "Building") and the Building Equipment against loss or damage by fire and against loss or damage by other risks now

or hereafter embraced by "All-Risks" insurance, so called, in an amount sufficient to prevent the Mortgagor from becoming a co-insurer under the applicable policies but, in any event, not less than 100% of the "full replacement cost" thereof, without deduction for depreciation, and with a replacement cost endorsement, agreed amount endorsement and ordinance or law coverage endorsement satisfactory to the Mortgagee. As used herein, "full replacement cost" shall mean (A) with reference to the Building, the cost of replacing the Building, exclusive of the cost of excavations, foundations and footings below the lowest basement floor, and (B) with reference to the Building Equipment, the cost of replacing the Building Equipment, and in either case, without deduction for the physical depreciation thereof. Such full replacement cost shall be determined from time to time (but not more often than once every twenty-four months) at the request of the Mortgagee by an insurer or by an appraiser, architect or contractor designated by the Mortgagee and paid by the Mortgagor. No omission on the part of the Mortgagee to request any such determination shall relieve the Mortgagor of any of its obligations under this Article 2.

(ii)    Commercial general liability insurance (with contractual liability on an occurrence basis and including blanket contractual liability, completed operations and personal injury coverage) against claims for bodily injury, death or property damage occurring on, in or about the Premises, such insurance to afford protection, during the term of this Mortgage, in such amounts as the Mortgagee may from time to time require.

(iii)    Insurance against loss or damage from (A) leakage of sprinkler systems and (B) explosion of steam boilers, air conditioning equipment, pressure vessels or similar apparatus now or hereafter installed in the Building, in such amounts as the Mortgagee shall from time to time require.

(iv)    Rent and/or business interruption insurance for loss occasioned by the perils commonly insured in the "All Risks" policy, so-called, in an amount not less than one year's gross income from the Premises plus the annual "Taxes" (as defined in Article 5(b) hereof) thereon.

(v)    When all or any portion of the Premises is located within a flood zone or area designated as subject to flood by the Federal Insurance Administration, Department of Housing and Urban Development or, if such flood insurance is otherwise required by any Federal, State or local rule, law, statute, regulation or ordinance, flood insurance on the Building in an amount equal to the lesser of "full replacement cost" thereof or the maximum amount of insurance obtainable.

(vi)    Worker's compensation and employer's liability insurance, subject to statutory limitations or better, in regard to work or other operations on, about or in connection with the Premises.

(vii)    When required by the Mortgagee, such other insurance in such amounts as may from time to time be required by Mortgagee against other insurable hazards which at the time are commonly insured against and generally available in the case of premises similarly situated, due regard being or to be given, to the height and type of the Building, its construction, use and occupancy.

b)    That the Mortgagor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder unless:

(i)    the policies are submitted to the Mortgagee for its prior approval;

(ii)    the insurers thereunder and the terms thereof are acceptable to the Mortgagee in accordance with the requirements of this Article; and

(iii)    the Mortgagee is included therein as mortgagee and/or loss payee, with loss payable as provided in this Article.

The Mortgagor shall immediately notify the Mortgagee whenever any such separate insurance is taken out and shall promptly deliver to the Mortgagee the policy or policies of such insurance.

c)    That all insurance provided for in this Article 2 shall be effected under valid and enforceable policies issued by financially responsible insurers having a general policyholder's and financial rating of not less than A/X, as rated in the most currently available Best's Insurance Reports, and incorporated under the Laws of the United States or any state thereof and authorized to do business in the State of New York and which are approved in writing by the Mortgagee. It is further agreed that the aggregate amount of coverage underwritten by any insurer in conformance with the provisions of this Mortgage shall not exceed 10% of that insurer's surplus to policyholders. Upon the execution of this Mortgage and thereafter, not less than thirty (30) days prior to the expiration dates of the expiring policies theretofore furnished pursuant to this Article 2 or any other Article of this Mortgage, originals or certified copies of the policies bearing notations evidencing the payment of not less than one year's premiums, or accompanied by other evidence satisfactory to the Mortgagee of such payment, shall be assigned and delivered by the Mortgagor to the Mortgagee.

d)    That all policies of insurance required by clauses (i), (iii), (iv), (v) and, if appropriate, (vii) of subdivision (a) of this Article 2 shall contain the standard non-contributory mortgagee endorsement in favor of the Mortgagee (entitling the Mortgagee to collect any and all proceeds payable under such insurance), and shall provide that the Mortgagee shall have the sole and exclusive right to adjust any insurance awards. All policies of insurance required by clause (ii) of subdivision (a) of this Article 2 shall name the Mortgagee as an additional insured. All insurance maintained by the Mortgagor shall be satisfactory in all respects to the Mortgagee and shall provide that (i) no cancellation, material change or reduction in the coverage or amounts thereof shall be effective until at least thirty (30) days after receipt by the Mortgagee of written notice thereof, and (ii) all losses shall be payable notwithstanding any act or negligence of the Mortgagor or its agents or employees which might, absent such agreement, result in a forfeiture of all or part of any insurance payment, and notwithstanding (A) the occupation or use of the Premises for purposes more hazardous than permitted by the terms of the policy, (B) any foreclosure or other action or proceeding taken pursuant to any provision of this Mortgage, or (C) any change in title or ownership of the Premises or any part thereof. If binders for any of the insurance required by this Article 2 were delivered upon the execution of this Mortgage, originals or certified copies of the policies of insurance to be issued pursuant to such binders shall be delivered to the Mortgagee within thirty (30) days from the date hereof.

e)      That, if the Mortgagor shall fail to procure, pay for or deliver to the Mortgagee any policy or policies of insurance and/or renewals thereof as in this Article 2 required, the Mortgagee may, at its option, but shall be under no obligation to do so, effect such insurance and pay the premium therefor, and the Mortgagor will repay to the Mortgagee on demand any premiums so paid, with interest thereon at the rate set forth in Article 4 hereof. Any amount so expended by the Mortgagee, with interest thereon, shall be secured by the lien of this Mortgage. The Mortgagor hereby waives any claim against the Mortgagee by reason of the failure of the Mortgagee to (i) notify the Mortgagor of the cancellation or non-renewal of any insurance required by this Article 2, or (ii) effect any such insurance. The foregoing waiver shall apply notwithstanding that the Mortgagee has elected to require the Mortgagor to escrow insurance premiums with the Mortgagee pursuant to Article 5(b) hereof.

f)      That, notwithstanding the provisions of Subdivision 4 of Section 254 of the Real Property Law, the Mortgagee shall be entitled to retain and apply the proceeds of any and all insurance required by clauses (i), (iii), (iv), (v) and, if appropriate, (vii) of subdivision (a) of this Article 2 to the payment of the indebtedness secured hereby in the inverse order of its maturity.

g)      That, in the event of a foreclosure of this Mortgage, the purchaser of the Premises shall succeed to all the rights of the Mortgagor, including any rights to the proceeds of insurance and to unearned premiums, in and to all policies of insurance required by this Article.

3.      That no building or other property now or hereafter covered by the lien of this Mortgage shall be removed, demolished or materially altered without the prior written consent of the Mortgagee, except that the Mortgagor shall have the right, without such consent, to remove and dispose of, free from the lien of this Mortgage, such Building Equipment as from time to time may become worn out or obsolete, provided that either (a) simultaneously with or prior to such removal, any such equipment shall be replaced with other equipment of a value at least equal to that of the replaced equipment and free from any Security Agreement, and by such removal and replacement the Mortgagor shall be deemed to have subjected such Building Equipment to the lien of this Mortgage, or (b) any net cash proceeds received from such disposition shall be paid over promptly to the Mortgagee to be applied to the last installments due on the indebtedness secured, without any charge for prepayment.

4.      That in the event of any default in the performance of any of the Mortgagor's covenants or agreements herein, the Mortgagee may, at the option of the Mortgagee, perform the same and the cost thereof, with interest at twenty-four (24%) percent per annum (but in no event in excess of the maximum rate allowed by law to be charged to the Mortgagor), shall immediately be due from the Mortgagor to the Mortgagee and secured by this Mortgage. If the principal sum of the Note shall not be paid at its maturity, or on its acceleration pursuant to Article 18 hereof, interest thereon shall thereafter be computed and paid at the said rate per annum specified in this Article 4 until the entire principal balance of the Note is repaid to the Mortgagee in full. It is the express intention of the Mortgagor that the unpaid principal balance of the Note shall continue to bear interest at the said rate per annum specified in this Article 4, notwithstanding the entry of a judgment to foreclose this Mortgage and/or on the Note and that, to the extent permitted by applicable law, interest on the amount of any such judgment shall be computed and paid at the said rate per annum specified in this Article 4.

5.    a)    That the Mortgagor will pay all taxes, assessments, water rates, sewer rents and other charges now or hereafter levied against the Premises or any part thereof, and also any and all license fees or similar charges which may be imposed by the municipality in which the Premises are situated for the use of walks, chutes, areas and other space beyond the lot line and on or abutting the public sidewalks in front of or adjoining the Premises, together with any penalties or interest on any of the foregoing, and in default thereof the Mortgagee may pay the same and the Mortgagor will repay the same with interest thereon at the rate per annum specified in Article 4 hereof and the same shall be secured by the lien of this Mortgage; that upon request of the Mortgagee, the Mortgagor will exhibit to the Mortgagee receipts for the payment of all items specified in this Article prior to the date when the same shall become delinquent.

b)    That the Mortgagee may, at its option to be exercised by twenty (20) days written notice to the Mortgagor, require that the Mortgagor deposit with the Mortgagee, on the first day of each and every month, simultaneously with the payment of the monthly installments of principal and/or interest then due under the Note, a sum equal to one-twelfth (1/12th) of the annual real estate taxes, assessments, water rates, sewer rents and other charges specified in this Article 5 (hereinafter collectively referred to as "Taxes") plus one-twelfth (1/12th) of the premiums required to keep in force for one year the insurance specified in Article 2 hereof. The Mortgagor shall also deposit with the Mortgagee, if such deposits shall be so required, at least thirty (30) days prior to the due date of each installment of such Taxes and each insurance premium, such additional amount as may be determined by the Mortgagee in order to provide the Mortgagee with funds sufficient to pay such installment or premium. It is the intention of the parties that, if such deposits shall be so required, the Mortgagor shall deposit with the Mortgagee the necessary funds so that the Mortgagee, at all times until the full payment and satisfaction of this Mortgage, shall have on hand sufficient deposits covering the accrued amounts of such Taxes and insurance premiums. If permitted by law, the said funds shall bear no interest and may be commingled with other funds of the Mortgagee. The Mortgagee shall have no obligation to use said funds to pay an installment of Taxes prior to the last day on which payment thereof may be made without penalty or interest and until receipt by the Mortgagee of a bill for such Taxes or to pay an insurance premium prior to the due date thereof and receipt by the Mortgagee of a bill for such premium. If the whole of said principal sum and interest shall be declared due and payable by the Mortgagee pursuant to Article 18 hereof, all such deposits may, at the option of the Mortgagee, be applied in reduction of said principal sum and/or interest, as the Mortgagee shall elect. Upon an assignment of this Mortgage, the Mortgagee shall have the right to pay over the balance of such deposits in its possession to the assignee and the Mortgagee shall thereupon be completely released from all liability with respect to such deposits and the Mortgagor or owner of the Premises shall look solely to the assignee or transferee in reference thereto. This provision shall apply to every transfer of such deposits to a new assignee. Upon full payment and satisfaction of this Mortgage or at any prior time, at the election of the Mortgagee, the balance of the deposits in its possession shall be paid over to the record owner of the Premises and no other party shall have any right or claim thereto in any event. The Mortgagor agrees to make the aforesaid deposits with such servicer or financial institution as the Mortgagee shall from time to time designate and to deliver to the Mortgagee, or to any such servicer or financial institution, any and all bills for Taxes promptly upon the Mortgagor's receipt thereof.

6.     That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

7.     That the Mortgagor, within five (5) days upon request in person or within ten (10) days upon request by mail, will furnish a written statement duly acknowledged of the amount due on this Mortgage and whether any offsets or defenses exist against the mortgage debt.

8.     That notice and demand or request may be in writing and may be served in person or by mail.

9.     The Mortgagor warrants that it has good and marketable title to an indefeasible fee estate in the Premises subject in all cases to no lien, charge or encumbrance except such as are listed as exceptions to title in the title policy insuring the lien of this Mortgage.

10.    That in case of a foreclosure sale, the Premises, or so much thereof as may be affected by this Mortgage, may be sold in one parcel.

11.    That if any action or proceeding be commenced (including an action to foreclose this Mortgage or to collect the debt secured hereby), in which the Mortgagee becomes a party or participates, by reason of being the holder of this Mortgage or the debt secured hereby, all sums paid by the Mortgagee for the expense of so becoming a party or participating (including reasonable counsel fees) shall on notice and demand be paid by the Mortgagor, together with interest thereon at the rate per annum specified in Article 4 hereof, and shall be a lien on the Premises, prior to any right or title to, interest in, or claim upon, the Premises subordinate to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.  In any action or proceeding to foreclose this Mortgage, or to recover or collect the debt secured hereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall apply in addition to the foregoing.

12.    That the Mortgagor will maintain the Premises and the Building Equipment in good condition and repair, will not commit or suffer any waste thereof or the conduct of any nuisance or unlawful occupation or business on, or use of, the Premises, and will comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises; that the Mortgagor will promptly repair, restore, replace or rebuild any part of the Premises or the Building Equipment now or hereafter subject to the lien of this Mortgage which may be damaged or destroyed by any casualty whatsoever or which may be affected by any proceeding of the character referred to in Article 13; and that the Mortgagor will not initiate, join in, or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions, limiting or defining the uses which may be made of the Premises, or any part thereof.

13.    That notwithstanding any taking by eminent domain or other governmental action causing injury to, or decrease in value of, the Premises and creating a right to compensation therefor, including, without limitation, the change of the grade of any street, the Mortgagor shall continue to pay interest, computed at the rate reserved in the Note, on the entire unpaid principal amount thereof, until the award or compensation for such taking or other action shall have been actually

received by the Mortgagee and such award or compensation need not be applied by the Mortgagee in reduction of principal but may be applied in such proportions and priority as the Mortgagee, in the Mortgagee's sole discretion, may elect, to the payment of principal, interest or other sums secured by this Mortgage and/or to payment to the Mortgagor, on such terms as the Mortgagee may specify, for the sole purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking or other action; that if, prior to the receipt by the Mortgagee of such award or compensation, the Premises shall have been sold on foreclosure of this Mortgage, the Mortgagee shall have the right to receive said award or compensation to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this Mortgage shall have been sought or recovered or denied, together with reasonable counsel fees and the costs and disbursements incurred by the Mortgagee in connection with the collection of such award or compensation.

14.    That the Mortgagee and any persons authorized by the Mortgagee shall have the right to enter and inspect the Premises at all reasonable times; and that if, at any time after default by the Mortgagor in the performance of any of the terms, covenants or provisions of this Mortgage or of the Note, the management or maintenance of the Premises shall be determined by the Mortgagee to be unsatisfactory, the Mortgagor shall employ, for the duration of such default, as managing agent of the Premises, such person or firm as from time to time shall be approved by the Mortgagee.

15.    That the Mortgagor shall furnish to the Mortgagee as promptly as reasonably possible, such financial or other information with respect to the Mortgagor, any of the GUARANTOR or the operation of the Premises as the Mortgagee may reasonably request.

16.    That the Mortgagor hereby assigns to the Mortgagee, as further security for the payment of the indebtedness secured hereby, the rents, issues and profits of the Premises, together with all leases and other documents evidencing such rents, issues and profits now or hereafter in effect and any and all deposits held as security under said leases, and shall, upon demand, deliver to the Mortgagee an executed counterpart of each such lease or other document. Nothing contained in the foregoing sentence shall be construed to bind the Mortgagee to the performance of any of the covenants, conditions or provisions contained in any such lease or other document or otherwise to impose any obligation on the Mortgagee (including, without limitation, any liability under the covenant of quiet enjoyment contained in any lease in the event that any tenant shall have been joined as a party defendant in any action to foreclose this Mortgage and shall have been barred and foreclosed thereby of all right, title and interest and equity of redemption in the Premises), except that the Mortgagee shall be accountable for any money actually received pursuant to such assignment. The Mortgagor hereby further grants to the Mortgagee the right (a) to enter upon and take possession of the Premises for the purpose of collecting the said rents, issues and profits; (b) to dispossess by the usual summary proceedings any tenant defaulting in the payment thereof to the Mortgagee; (c) to let the Premises, or any part thereof, and (d) to apply said rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. Such assignment and grant shall continue in effect until the indebtedness secured by this Mortgage is paid, the execution of this Mortgage constituting and evidencing the irrevocable consent of the Mortgagor to the entry upon and taking possession of the Premises by the Mortgagee pursuant to such grant, whether foreclosure has been instituted or not and without applying for a receiver. The Mortgagee, however, grants to the Mortgagor a license to collect and receive the rents, issues and

profits of the Premises until the occurrence of a default by the Mortgagor under any of the covenants, conditions or agreements contained in this Mortgage. The Mortgagor agrees to hold said rents, issues and profits as a trust fund for the benefit of the Mortgagee and to apply the same as required by the Mortgagee in payment of principal and interest becoming due on this Mortgage and in payment of taxes, assessments, water rates, sewer rents and carrying charges becoming due against the Premises. Such license of the Mortgagor to collect and receive said rents, issues and profits may be revoked by the Mortgagee upon any such default by the Mortgagor without notice to the Mortgagor of such revocation. In the event of any default under this Mortgage, the Mortgagor will pay monthly in advance to the Mortgagee, on its entry into possession pursuant to the foregoing grant, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of the Premises or of such part thereof as may be in the possession of the Mortgagor, and upon default in any such payment will vacate and surrender the possession of the Premises or such part thereof, as the case may be, to the Mortgagee or to such receiver, and, in default thereof, may be evicted by summary proceedings.

17.    a)    That the Mortgagor shall not enter into any lease for all or any portion of the Premises without the prior written consent of the Mortgagee.

        b)    That the Mortgagor has no right or power, as against the Mortgagee without its prior written consent, to cancel, abridge or otherwise modify the leases or subleases of the Premises or any of the terms, provisions or covenants thereof or to accept prepayments of installments of rent to become due thereunder and the Mortgagor shall not do so without such consent. This agreement, insofar as it affects any lease or sublease which is not primarily for the residential purposes of the owner of the leasehold estate and which, at the date hereof, has an unexpired term of not less than five (5) years, is made with reference to Section 291-f of the Real Property Law. Upon notice and demand, the Mortgagor will, from time to time, execute, acknowledge and deliver or cause to be executed, acknowledged and delivered to the Mortgagee, in form satisfactory to the Mortgagee, one or more separate assignments (confirmatory of the general assignment provided in Article 16 hereof) of the lessor's interest in any lease or sublease now or hereafter affecting the whole or any part of the Premises, or one or more agreements pursuant to said Section 291-f, restricting the Mortgagor's right or power, as against the Mortgagee, without its consent, to cancel, abridge or otherwise modify, or accept prepayments of installments of rent to become due under, any lease or sublease hereafter in existence, which is of the character described in the second sentence of this Article. The Mortgagor shall pay to the Mortgagee on demand any expenses incurred by the Mortgagee in connection with the preparation and recording of any such assignment or agreement. With respect to any lease referred to in this Article, or which at any time is covered by any such agreement or any such assignment of lessor's interest in such lease, the Mortgagor will (i) fulfill or perform each and every condition and covenant of the same to be fulfilled or performed by the landlord thereunder, (ii) give prompt notice to the Mortgagee of any notice of default by the landlord thereunder received by the Mortgagor together with a complete copy of any such notice, and (iii) enforce, short of termination thereof, the performance or observance of each and every covenant and condition thereof by the lessee thereunder to be performed or observed.

18.    That the whole of said principal sum and the interest shall become due at the option of the Mortgagee: (a) after default in the payment of any installment of principal or interest for five (5) days; or (b) after default in the payment of any tax, water rate, sewer rent, assessment or vault

10

license fee for twenty (20) days after the same first becomes due and payable, it being understood and agreed that an assessment which has been made payable in installments at the application of the Mortgagor or any lessee of the Premises shall, nevertheless, for the purposes of this clause, be deemed due and payable in its entirety on the date the first installment becomes due or payable or a lien; or if the Mortgagor fails to furnish the Mortgagee with receipted tax bills or other proof of payment of the aforesaid items by no later than the dates on which such items must be paid so as not to constitute a default hereunder; or (c) after default after notice and demand, either in assigning and delivering the policies of insurance herein described or referred to, or in reimbursing the Mortgagee for premiums paid on such insurance, as hereinbefore provided; or (d) upon the actual or threatened waste, removal or demolition of any building or other property on the Premises, except as permitted by Article 3; or (e) upon assignment by the Mortgagor of the whole or any part of the rents, issues or profits arising from the Premises to any person without the written consent of the Mortgagee or if, without such consent, the Mortgagor shall further encumber the Premises for debt; or (f) if the buildings on the Premises are not maintained in reasonably good repair; or (g) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the Premises within three months from the issuance thereof; or (h) if, on application of the Mortgagee, two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the Premises; or (i) after thirty (30) days' notice to the Mortgagor, in the event of the passage of any law deducting from the value of land for the purposes of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes, or the manner of collecting such taxes and imposing a tax, either directly or indirectly, on this Mortgage or the Note; or (j) if the Mortgagor shall fail to make payment of any other sums required to be paid hereunder within the period required by specific provision of this Mortgage or, if no such period is so provided, by not later than ten (10) days after written notice; or (k) if the Mortgagor shall fail to comply with any other covenants or conditions contained in this Mortgage and, except with respect to failure to pay money, such failure shall continue unremedied for the period within which performance is required to be made by specific provision of this Mortgage, or, if no such period is so provided, for a period of ten (10) days after written notice thereof shall have been given by the Mortgagee or, with respect to any such default which shall be of such nature that it cannot reasonably be cured or remedied within ten (10) days, if the Mortgagor shall not promptly commence and exercise due diligence and continuous effort to remedy the same; or (1) if the Mortgagor or a Guarantor shall: (i) admit in writing its inability to pay its debts generally as they become due; (ii) file a petition in bankruptcy or a petition to take advantage of any insolvency act; (iii) make an assignment for the benefit of creditors; (iv) consent to, or acquiesce in, the appointment of a receiver, liquidator or trustee of itself or of the whole or any substantial part of its properties or assets; (v) file a petition or answer seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under the federal bankruptcy laws or any other applicable law; or (m) (i) if, without the Mortgagor's or a Guarantor's as the case may be, consent or acquiescence, a court of competent jurisdiction shall enter an order, judgment or decree appointing a receiver, liquidator, or trustee of the Mortgagor or a Guarantor, or of the whole or any substantial part of the property or assets of the Mortgagor or such Guarantor, and such order, judgment or decree shall remain unvacated, or not set aside, or unstayed for thirty (30) days, or (ii) if a petition shall be filed against the Mortgagor or a Guarantor seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief

under the federal bankruptcy laws or any other applicable law and such petition shall remain undis-
missed for thirty (30) days, or (iii) if, under the provisions of any other law for the relief or aid of
debtors, any court of competent jurisdiction shall assume custody or control of the Mortgagor or a
Guarantor or of the whole or any substantial part of its property or assets, and such custody or
control shall remain unterminated or unstayed for thirty (30) days; or (n) if judgment for One
Hundred Thousand ($100,000) Dollars or more shall be rendered against the Mortgagor or a
Guarantor which shall not be discharged or bonded pending appeal within thirty (30) days from
the entry thereof; or (o) if any representation, warranty or statement contained herein or in any
writing delivered to the Mortgagee simultaneously with the execution and delivery hereof, shall
prove to be incorrect in any material respect; or (p) if, without the prior written consent of the
Mortgagee, (i) the Premises or any portion thereof or interest therein shall be sold or otherwise
transferred by the Mortgagor, or (ii) if the Mortgagor or a Guarantor shall be a Corporation, a
controlling amount of voting stock of the Mortgagor or such Guarantor shall be sold or otherwise
transferred or pledged, hypothecated or otherwise transferred as security for debt, or (iii) if the
Mortgagor or a Guarantor shall be a partnership, joint venture, Corporation, syndicate or other
group, all or any portion of the interest of any general partner or sole member of the Mortgagor or
such Guarantor shall be sold or otherwise transferred or pledged, hypothecated or otherwise
transferred as security for debt, or (iv) any mortgage lien other than the lien of this Mortgage or
any other mortgage in favor of the Mortgagee shall be placed on the Premises; or (q) if the
Mortgagor shall fail to pay, within any applicable grace or cure period, any other sum now or
hereafter owing by the Mortgagor to the Mortgagee; or (r) if the Mortgagor shall fail to comply
with any term, covenant or condition contained in any other mortgage encumbering the Premises
now or hereafter held by the Mortgagee or contained in the note secured thereby; or (s) if, in the
opinion of the Mortgagee, a material adverse change shall occur in the financial condition of the
Mortgagor or of any Guarantor; or (t) if a default shall occur under any guaranty executed by a
Guarantor with respect to the indebtedness of the Mortgagor to the Mortgagee; or (u) if the
Mortgagor or any Guarantor shall fail to comply with any term, covenant or condition contained
in that certain Environmental Indemnity, **dated August 5, 2021**, executed and delivered by
Mortgagor and Guarantor to the Mortgagee.

19.    That the Mortgagor will, in compliance with Section 13 of the Lien Law, receive the
advances secured hereby and will hold the right to receive such advances as a trust fund to be
applied first for the purpose of paying the cost of improvement and will apply the same first to the
payment of the cost of improvement before using any part of the total of the same for any other
purpose.

20.    That any payment made in accordance with the terms of this Mortgage by any person at
any time liable for the payment of the whole or any part of the sums now or hereafter secured by
this Mortgage, or by any subsequent owner of the Premises, or by any other person whose interest
in the Premises might be prejudiced in the event of a failure to make such payment, or by any
stockholder, shareholder, officer or director of a Corporation and/or Corporation which at any time
may be liable for such payment or may own or have such an interest in the Premises, shall be
deemed, as between the Mortgagee and all persons who at any time may be liable as aforesaid or
may own the Premises, to have been made on behalf of all such persons.

21.     That any failure by the Mortgagee to insist upon the strict performance by the Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and the Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by the Mortgagor of any and all of the terms and provisions of this Mortgage to be performed by the Mortgagor; that neither the Mortgagor nor any other person now or hereafter obligated for the payment of the whole or any part of the sums now or hereafter secured by this Mortgage shall be relieved of such obligation by reason of the failure of the Mortgagee to comply with any request of the Mortgagor, or of any other person so obligated, to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or any obligations secured by this Mortgage, or by reason of the release, regardless of consideration, of the whole or any part of the security held for the indebtedness secured by this Mortgage, or by reason of any agreement or stipulation between any subsequent owner or owners of the Premises and the Mortgagee extending the time of payment or modifying the terms of the Note or this Mortgage without first having obtained the consent of the Mortgagor or such other person, and in the latter event, the Mortgagor and all such other persons shall continue liable to make such payments according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by the Mortgagee; that, regardless of consideration and without the necessity for any notice to or consent by the holder of any subordinate lien on the Premises, the Mortgagee may release the obligation of anyone at any time liable for any of the indebtedness secured by this Mortgage or any part of the security held for the indebtedness without, as to the security or the remainder thereof, in anywise impairing or affecting the lien hereof or the priority thereof over any subordinate encumbrance; and that the Mortgagee may resort for the payment of the indebtedness secured hereby to any other security therefor held by the Mortgagee in such order and manner as the Mortgagee may elect.

22.     a)     That if at any time the United States of America, any state thereof or any governmental subdivision of such state, having jurisdiction, shall require internal revenue stamps to be affixed to the Note, or other tax paid on or in connection therewith, the Mortgagor will pay the same with any interest or penalties imposed in connection therewith.

        b)     (i)     That if, by reason of the additional sums that may become secured by the lien of this Mortgage pursuant to the terms hereof, a court or other governmental authority having jurisdiction at any time shall determine that this Mortgage falls within the ambit of Section 256 of the Tax Law of the State of New York, then the Mortgagee reserves the right, in its sole and absolute discretion, to elect not to have such additional sums secured by this Mortgage and thereby reduce the mortgage indebtedness secured hereby to a definite amount equal to the principal amount of the Note, interest thereon at the rate(s) provided in the Note, plus any disbursements made to protect the security of this Mortgage, with interest on such disbursements at the rate provided in Article 4 of this Mortgage, plus any such other sums as by statute or judicial inter-pretation now or hereafter may be permitted to be secured by the lien of a mortgage without incurring any additional mortgage recording tax. Any election by the Mortgagee to so reduce the mortgage indebtedness secured hereby shall in no event be deemed a release, waiver or discharge by the Mortgagee of the Mortgagor's obligation to pay or reimburse the Mortgagee for such sums and such obligation shall continue unimpaired and shall be recourse obligations of the Mortgagor and any Guarantor, regardless of any other provisions set forth herein, in the Note or in any

guaranty of the indebtedness secured hereby that may limit recourse against the Mortgagor or anyone else.

(ii)    That it is further understood and agreed that any sums, including, without limitation, any prepayment penalties, late charges or liquidated damages, that may become due and payable pursuant to the terms of the Note and/or this Mortgage and that are in the nature of interest shall, for the purpose of determining the amount of mortgage recording tax due and payable on this Mortgage, be considered as additional interest, whether or not so denominated, and such sums shall be secured by the lien of this Mortgage to the fullest extent possible without causing this Mortgage to be covered by Section 256 of the Tax Law, shall not be deemed principal and shall not accrue any interest thereon.

23.    a)    That this Mortgage shall be deemed a Security Agreement as defined in the Uniform Commercial Code of the State of New York  and the remedies for any violation of the covenants, terms and conditions of the agreements herein contained shall be (i) as prescribed herein, (ii) by general law, or (iii) as to such part of the security which is also reflected in a financing statement filed by the Mortgagee, by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Mortgagee's sole election. The filing of such a financing statement in the records normally having to do with personal property shall never be construed as in any way derogating from or impairing this declaration and hereby stated intention of the parties hereto, that all items of Building Equipment and other property used in connection with the production of income from the Premises (furniture only excepted) or adapted for use therein and/or which is described or reflected in this Mortgage are, and at all times and for all purposes and in all proceedings, both legal and equitable, shall be, regarded as part of the real estate irrespective of whether or not (i) any such item is physically attached to the improvements, (ii) serial numbers are used for the better identification of certain equipment items capable of being thus identified in a recital contained herein or in any list filed with the Mortgage or (iii) any such item is referred to or reflected in any such financing statement so filed at any time.  Similarly, the mention in any such financing statement of (1) the rights in or the proceeds of any fire and/or hazard insurance policy, (2) any award in eminent domain proceedings for a taking or for loss of value or (3) the debtor's interest as lessor in any present or future lease or rights to income growing out of the use or occupancy of the Premises, whether pursuant to a lease or otherwise, shall never be construed as in any way altering any of the rights of the Mortgagee as determined by this instrument or impugning the priority of the Mortgagee's lien granted hereby or by any other recorded document, but such mention in the financing statement is declared to be for the protection of the Mortgagee in the event any court or judge shall at any time hold with respect to (1), (2) or (3) that notice of the Mortgagee's priority of interest, to be effective against a particular class of persons, including but not limited to the Federal government and any subdivisions or entity of the Federal government, must be filed in the Uniform Commercial Code records.

b)    That the Mortgagor hereby authorizes the Mortgagee, without the signature of the Mortgagor, to execute and file financing statements in order to perfect its security interest in any fixtures, chattels or articles of personal property covered by this Mortgage, and shall pay to the Mortgagee on demand any expenses incurred by the Mortgagee in connection with the preparation,

execution and filing of such statements and any continuation statements that may be filed by the Mortgagee.

24.     That the Mortgagor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from execution or sale of the Premises or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Mortgage, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Premises, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; nor, after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof and the Mortgagor hereby expressly waives all benefit or advantage of any such law or laws and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to the Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted. The Mortgagor, for itself and all who may claim under it, waives, to the extent that it lawfully may, all right to have the Premises marshaled upon any foreclosure hereof.

25.     That if the Mortgagor consists of more than one party, such parties shall be jointly and severally liable under any and all obligations, covenants and agreements of the Mortgagor contained herein.

26.     That the clauses and covenants contained herein which are construed by Section 254 of the Real Property Law shall be construed as provided in that section, except as otherwise provided in Article 2 hereof; that the additional clauses and covenants contained herein shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by such Section 254 and shall not impair, modify, alter or defeat such rights notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254; that the rights of the Mortgagee arising under the clauses and covenants contained in this Mortgage shall be separate, distinct and cumulative and none of them shall be in exclusion of the others; that no act of the Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding.

27.     That the Mortgagor shall keep this Mortgage a valid first lien upon the Premises; shall not at any time create or allow accruing or existing any other lien or encumbrance upon the Premises or any part thereof; and shall not cause or permit the lien of this Mortgage to be diminished or impaired in any way.

28.     That wherever used in this Mortgage, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, the word "lease" shall mean "tenancy, subtenancy, lease or sublease", the word "Mortgagor" shall mean "Mortgagor and any subsequent owner or owners of the Premises", the word "Mortgagee" shall mean "Mortgagee or any subsequent holder or holders of this Mortgage", the word "person" shall mean "an individual,

Corporation, Corporation, partnership or unincorporated association" and the word "Premises" shall include the real estate hereinbefore described, together with all Building Equipment, condemnation awards and any other rights or property interests at any time made subject to the lien of this Mortgage by the terms hereof.

29.    That the execution of this Mortgage has been duly authorized by the unanimous consent of the sole member of the Mortgagor.

30.    That, notwithstanding the grace period set forth in Article 18(a) hereof, the Mortgagee may collect a late charge, not to exceed five cents for each dollar of each installment of principal and/or interest payable under the Note more than ten (10) days in arrears from its due date, in order to cover the extra expense involved in handling delinquent payments, which late charge shall be due and    payable    with    the    next    payment    of    interest    due    under    the    Note.

31.    That the Mortgagor shall pay all fees and charges incurred in the procuring and making of the loan evidenced by the Note and secured by this Mortgage, including without limitation, the reasonable fees and disbursements of the Mortgagee's attorneys, charges for appraisals, fees and expenses relating to examination of title, title insurance premiums, surveys and mortgage recording, documents, transfer or other similar taxes and revenue stamps.

32.    That if following the occurrence of any default under this Mortgage and an exercise by the Mortgagee of its option to declare the whole of said principal evidenced by the Note due and payable the Mortgagor shall tender payment of an amount sufficient to satisfy the entire indebtedness secured hereby at any time prior to a foreclosure sale of the Premises, such tender by the Mortgagor shall be deemed to be a voluntary prepayment of the said principal balance of the Note, and the Mortgagor shall, in addition to the said entire principal, also pay to the Mortgagee the applicable prepayment premium, if any, specified in the Note. All such payments shall also be accompanied by payment of all accrued interest under the Note.

33.    The loan secured by this mortgage is a commercial loan. The Mortgagor acknowledges that the property secured by this mortgage will not be occupied by the Mortgagor, any GUARANTOR, their Agent's, Servant's, Employees or any Affiliate's. The borrower further acknowledges that the lender has originated this loan in reliance upon the occupancy status represented above and the Affidavit of Non-Occupancy, **dated August 5, 2021**, executed and delivered by Mortgagor and Guarantor to the Mortgagee.

34.    That the Mortgagor recognizes that, in general, borrowers who experience difficulties in honoring their loan obligations, in an effort to inhibit or impede lenders from exercising the rights and remedies available to lenders pursuant to mortgages, notes, loan agreements or other instruments evidencing or affecting loan transactions, frequently present in court the argument, without merit, that some loan officer or administrator of the lender made an oral modification or made some statement which could be interpreted as an extension or modification or amendment of one or more debt instruments and that the borrower relied to its detriment upon such "oral modification of the loan document". For that reason, and in order to protect the Mortgagee from such allegations in connection with the transactions contemplated by this Mortgage, the Mortgagor acknowledges that this Mortgage, the Note, and all instruments referred to in any of them can be extended,

modified or amended only in writing executed by the Mortgagee and that none of the rights or benefits of the Mortgagee can be waived permanently except in a written document executed by the Mortgagee. The Mortgagor further acknowledges the Mortgagor's understanding that no officer or administrator of the Mortgagee has the power or the authority from the Mortgagee to make an oral extension or modification or amendment of any such instrument or agreement on behalf of the Mortgagee.

35.    a)    That the Mortgagor hereby represents and warrants that the Premises is not currently used nor, to the best of the Mortgagor's knowledge after diligent investigation, had it been used in the past, by the Mortgagor, prior owners, tenants, operators, or any other persons or organizations, in a manner that violates any applicable federal, state, or local law, statute, ordinance or regulation, or any court or administrative order or decree of any governmental or quasi-governmental authority or agency or any private agreement pertaining to environmental matters or hazardous substances (hereinafter collectively called "Environmental Requirements"), and, to the best of its knowledge, information and belief, there are no conditions existing at, or materials currently located on, the Premises that would violate any Environmental Requirements or give rise to liability for hazardous substances (including, without limitation, solid wastes, toxic materials, radon, asbestos and oil) or any substances that would require special handling in collection, storage, treatment or disposal (hereinafter collectively called "Hazardous Substances"). The Mortgagor will not place or permit to be placed on the Premises any Hazardous Substances or use or permit the use of the Premises in a manner that would violate any applicable Environmental Requirements or give rise to any liability for Hazardous Substances. The Mortgagor further covenants and agrees that it will not use or permit the use or operation of the Premises in a manner that, in the sole determination of the Mortgagee, would constitute a dangerous, unhealthy or noxious use thereof, nor will the Mortgagor permit conditions to exist with respect to the Premises which, in the determination of the Mortgagee, would create a dangerous, unhealthy or noxious condition thereon. Further, if at any time it is determined that the operation or use of the Premises violates any applicable Environmental Requirements or that there are Hazardous Substances located on the Premises or any other materials that would create a dangerous, unhealthy or noxious condition on the Premises, then the Mortgagor shall, within thirty (30) days after written notice thereof from the Mortgagee, take or cause to be taken, at its sole expense, such actions as may be necessary to comply with all Environmental Requirements and/or cure such dangerous, unhealthy or noxious condition. The Mortgagor will not permit any federal, state or local environmental or hazardous waste lien to be levied against the Premises, regardless of whether such lien is subordinate to the lien of this Mortgage. Failure of the Mortgagor to comply with all Environmental Requirements shall be a default under this Mortgage.

b)    That to enforce the Mortgagor's obligations under this Article 35 and confirm its compliance with the same, the Mortgagee may, at its option, from time to time as it deems necessary if it has reasonable cause to believe that a violation of any Environmental Requirements has occurred, conduct or cause to be conducted an environmental audit (which may include, without limitation, test borings of the ground and chemical analyses of air, water and waste discharges) of the Premises or portions thereof, for which audits the Mortgagor shall be charged the actual costs thereof. The Mortgagor shall pay such costs on demand and upon failure to pay same, such costs shall bear interest at the rate set forth in Article 4 hereof from the date the same become due and payable until the date paid and shall be secured by the lien of this Mortgage.

c)    That the Mortgagor further represents and warrants that it has received no notices from any governmental or quasi-governmental authorities or agencies with respect to Environmental Requirements or environmental issues affecting the Premises, and has no knowledge of any such notices sent to any of the prior owners, tenants, or operators of the Premises or any other persons or organizations.  The Mortgagor shall send to the Mortgagee copies of all notices, letters or other communications respecting the Premises that are either received by the Mortgagor from any governmental or quasi-governmental authority or agency concerning Environmental Requirements or environmental issues affecting the Premises or sent by the Mortgagor to any such authority or agency regarding the same, within five (5) days after such receipt or transmittal by the Mortgagor.

d)    That if the Mortgagee in its sole discretion believes that the Premises are being used or operated in a manner, or that a condition exists on the Premises, which would (i) violate any Environmental Requirements, (ii) constitute a dangerous, unhealthy or noxious use thereof or condition thereon, or (iii) give rise to potential liability for Hazardous Substances, the Mortgagee may, but shall not be obligated to, perform or cause to be performed any remedial action, including, but not limited to, removal and clean-up, which the Mortgagee in its sole discretion believes necessary or prudent under the circumstances and the Mortgagee may make advances or payments towards performance or satisfaction of such Environmental Requirements, but shall be under no obligation to do so.  The Mortgagor shall execute and deliver, promptly after request, such instruments as the Mortgagee may deem useful or required to permit the Mortgagee to take any such action.  All sums so advanced or paid and all expenses incurred by the Mortgagee, including, without limitation, attorneys' fees, fines or other penalty payments and all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, shall immediately, upon demand, be due from the Mortgagor and shall bear interest at the rate set forth in Article 4 hereof from the date the same shall become due and payable until the date paid, and all sums so advanced or paid and expenses, incurred, with interest as aforesaid, shall be secured by the lien of this Mortgage.  The Mortgagor shall reimburse the Mortgagee for all such sums so advanced or paid and expenses incurred regardless of whether the Mortgagor would have ultimately been responsible for such costs under applicable law.  The Mortgagee by the payment of any such fees, fines or other penalty payments, may, if it sees fit, be thereby subrogated to the rights of the federal, state or local governmental entity or agency otherwise entitled to such rights under the applicable Environmental Requirements; but no such advance by the Mortgagee shall be deemed to relieve the Mortgagor from any default hereunder or impair any right or remedy consequent thereon.

e)    That the Mortgagor hereby agrees to indemnify, hold harmless, reimburse, and, upon request of the Mortgagee, defend the Mortgagee from and against any and all losses, liabilities, damages, injuries, costs, expenses and claims of any and every kind whatsoever (including, without limitation, attorneys' fees) which at any time may be paid, incurred or suffered by, or asserted against, the Mortgagee by reason of or any way (directly or indirectly) related to (i) the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission or release from the Premises into or upon any land, the atmosphere, or any watercourse, body of water or wetland, of any Hazardous Substances, (ii) the operation or use of the Premises or any portion thereof by the Mortgagor or any prior owner, operator, or tenant thereof or any other persons or

organizations, or (iii) the Premises or any portion thereof not complying fully with all Environmental Requirements.

f)     That the Mortgagor and each Guarantor shall be and remain jointly and severally liable under this Article 35 regardless of any other provisions that may limit recourse against the Mortgagor or anyone else which may be set forth herein, in the Note or in any guaranty of the indebtedness secured hereby. Furthermore, the provisions of this Article 35 shall survive the payment of the indebtedness secured hereby and the satisfaction, release, assignment or foreclosure of this Mortgage and/or any such guaranty.

36.    a)     That upon default by the Mortgagor in the performance of any of the terms, covenants or conditions of this Mortgage, or of the Note secured hereby, the Mortgagee shall have the right to sell the Premises, or any portion thereof, as provided in Article 14 of the New York Real Property Actions and Proceedings Law.

b)     That nothing in the foregoing shall be deemed to limit or impair the rights of the Mortgagee to commence a foreclosure action pursuant to Article 13 of the New York Real Property Actions and Proceedings Law or to pursue any other remedy against the Mortgagor, or any Guarantor, upon the occurrence of a default under this Mortgage or the Note.

37.    (a)     That as used in this Article 37, the following terms shall have the following meanings;

(i)     "Executive Order" shall mean Executive Order No. 13224 of September 23, 2001, 66 Fed. Reg. 65279, and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury ("OFC") and in any enabling legislation or other executive orders in respect thereof.

(ii)    "Patriot Act" shall mean the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as the same may be amended from time to time, and the regulations issued passed pursuant thereto.

(iii)    "Restricted List" shall mean any list of persons promulgated under or pursuant to the Executive Order.

(b)     That the Mortgagor represents and warrants to the Mortgagee that the Mortgagor, each Guarantor and each shareholder, partner, sole member, or affiliate thereof, as the case may be, and the beneficial owners, directly or indirectly, of such parties, (i) is in compliance with the Executive Order and the Patriot Act, (ii) has taken reasonable steps consistent with industry practice for comparable organizations, and in any event in accordance with law, to insure that such party is, and shall be, in compliance with the Executive Order and the Patriot Act, (iii) is not listed on the Restricted List, and (iv) is not under investigation by any governmental authority for, charged with, convicted of, been assessed civil penalties under, or had any funds seized or forfeited under the Executive Order, the Patriot Act or any other applicable anti-money laundering law.

(c)      That the Mortgagor shall adopt and maintain adequate policies, procedures, and controls to insure that it is in compliance with the Patriot Act (and all regulations issued thereunder that apply to the Mortgagor), the Executive Order and related government guidance and shall cause all of its shareholders, partners, sole member, and affiliates, as the case may be, or other parties having a direct or indirect interest in the Mortgagor to have equivalent policies in place.  Copies of all such policies, procedures, and controls will be made available for the Mortgagee's review upon demand and the Mortgagee may audit the Mortgagor's compliance herewith.

(d)      That the Mortgagor shall not knowingly (i) transfer or permit the transfer of any interest in the Mortgagor or in any shareholder, partner, sole member or affiliate of the Mortgagor, as the case may be, to any person who is, or whose direct or indirect beneficial owners are, listed on the Restricted List, or (ii) lease space at the Premises to any person who is, or whose direct or indirect beneficial owners are, listed on the Restricted List.

(e)      If the Mortgagor obtains knowledge that the Mortgagor or any of its shareholders, partners, sole member or affiliates, as the case may be, or its or their direct or indirect beneficial owners, becomes listed on the Restricted List or is indicted on charges involving money laundering (or predicate offenses), the Mortgagor shall immediately notify Mortgagee and no disbursements of the proceeds of the Note, escrow or reserve disbursements, or other disbursements under the Note, this Mortgage, or any other document executed in connection therewith shall be made and all of such funds shall be paid in accordance with the direction of a court of competent jurisdiction. If a tenant of the Premises is listed on the Restricted List or is convicted of or pleads *nolo contendere* to activity prohibited in the Executive Order, then the proceeds from the rents of such tenant shall not be used to pay any sums due under the Note, this Mortgage, or any other document executed in connection therewith and the Mortgagor shall provide the Mortgagee such representations and verifications as the Mortgagee shall reasonably request that such rents are not being so used.

38.    (Intentionally Omitted)

39.    That the Mortgagor agrees to indemnify, save, defend and hold harmless the Mortgagee and each of its officers, directors, shareholders, Affiliates and representatives, from and against any and all damages, liabilities, losses, obligations, actions, suits, disbursements, claims, deficiencies, penalties, interest, expenses, fines, assessments, charges and costs (including, without limitation, reasonable attorneys' fees, cost of investigations and court costs) of every kind, imposed on, incurred by or asserted against the Mortgagee or any of its officers, directors, shareholders, Affiliates or representatives in any way arising from or relating to the loan evidenced by the Note and secured by
this Mortgage or a breach, deficiency, inaccuracy or inadequacy of or in any statement, representation or warranty of the Mortgagor contained in this Mortgage, or in any agreement, schedule, certificate, attachment, exhibit, addendum or other document delivered pursuant hereto or as part of the transaction contemplated hereby.

40.    That Mortgagor will execute, acknowledge where appropriate, and deliver, or cause to be executed, acknowledged where appropriate, and delivered, from time to time, at the request of Mortgagee all such instruments or documents as in the opinion of Mortgagee are necessary or

advisable to carry out the intent or purpose of this Mortgage or the documents delivered pursuant hereto or as part of the transaction contemplated hereby.

41.    THAT THE MORTGAGOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, AND THE MORTGAGEE BY ITS ACCEPTANCE OF THE NOTE AND THIS MORTGAGE IRREVOCABLY AND NCONDITIONALLY WAIVES, ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THE NOTE, THIS MORTGAGE OR ANY OTHER DOCUMENT OR AGREEMENT RELATED TO THE LOAN SECURED BY THIS MORTGAGE.

42.    That upon payment to the Mortgagee of all sums due under the Note and this Mortgage, the Mortgagee shall assign this Mortgage and the Note, without recourse, to an assignee designated by the Mortgagor provided (a) such assignment is permitted pursuant to applicable law, (b) simultaneously therewith, or prior thereto, any and all other mortgages encumbering the Premise held by the Mortgagee have either been satisfied of record or assigned to another entity, and (c) the Mortgagor shall the reasonable attorneys' fees incurred by the Mortgagee in connection with such assignment.

43.    This Mortgage may not be changed or terminated orally, the covenants contained in this Mortgage shall run with the land and bind the Mortgagor, the heirs, personal representatives, successors and assigns of the Mortgagor and all subsequent encumbrancers, tenants and subtenants of the Premises; and shall ensure to the benefit of the Mortgagee, the successors and assigns of the Mortgagee.  The word "Mortgagor" shall be construed as if it read "Mortgagors" whenever the sense of this Mortgage so requires.

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor.

MORTGAGOR:
**PSB NY HOLDINGS LLC**

By: _____
PAUL STEPHEN BOYINGTON, Managing Member

TO BE USED ONLY WHEN THE ACKNOWLEDGEMENT IS MADE OUTSIDE NEW YORK STATE

State (or District of Columbia, Territory, or Foreign Country) Of: California
County of Riverside

On the 5th day of August in the year 2021, before me, the undersigned, Notary Public in the aforesaid state, personally appeared, Paul Stephen Boyington, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/ she/ they executed the same in his/ her/ their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

ELIZABETH BONILLA
Notary Public - California
Riverside County
Commission # 2221810
My Comm. Expires Dec 10, 2021

Notary Public
Notary Expires: 12-10-2021

*Commonwealth Land Title Insurance Company*

SCHEDULE A
DESCRIPTION OF PREMISES

Title No.    CACQ25872
Policy No.   8130732-224493417

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Shad Creek Road (as now open and in use, 30.00 feet wide), distant 240.00 feet northerly from the corner formed by the intersection of the westerly side of Shad Creek Road and the northerly side of West Ninth Road (as now open and in use, 30.00 feet wide);

RUNNING THENCE westerly at right angles to the westerly side of Shad Creek Road, 168.07 feet;

THENCE northerly at right angles to the last mentioned line, 29.00 feet;

THENCE easterly at right angles to the last mentioned line, 168.07 feet to the westerly side of Shad Creek Road;

THENCE southerly along the westerly side of Shad Creek Road, 29.00 feet to the point or place of BEGINNING.


FOR INFORMATION ONLY:

Block 15308 Lot 42

SCHEDULE A
A.L.T.A 2006 LOAN POLICY

# EXHIBIT A-3

<table>
<tr><td>

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

</td><td>



2024052300503001001E5D36

</td></tr>
</table>

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 6 |
|---|---|

| Document ID: 2024052300503001 | Document Date: 05-21-2024 | Preparation Date: 05-23-2024 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 5

| PRESENTER: | RETURN TO: |
|---|---|
| WIMBA TITLE AGENCY<br>645 MADISON AVE FL 19<br>NEW YORK, NY 10022-1010<br>YOGESH.VARADARAJAN@WIMBATITLE.COM | HOF 1 GRANTOR TRUST 1<br>60 LIVINGSTON AVENUE EP-MD-WS3D<br>ST. PAUL, MN 55107<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 15308 | 42 | Entire Lot | 721 SHAD CREEK ROAD |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN: 2021000410435

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| LOAN FUNDER LLC, SERIES 22540<br>645 MADISON AVENUE 19TH FLOOR<br>NEW YORK, NY 10022 | HOF 1 GRANTOR TRUST 1<br>60 LIVINGSTON AVENUE EP-MN-WS3D<br>ST. PAUL, MN 55107 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 62.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed        05-28-2024 15:07
City Register File No.(CRFN):
**2024000134663**

*City Register Official Signature*

Loan Funder LLC, Series 22540

-to-

HOF I Grantor Trust 1

The land affected by the within instrument Lies on
the Tax Map in the State of New York
County of Queens
Known as and by the street address:
721 Shad Creek Rd., Queens, NY 11693
Lot 42, Block 15308

**RECORD AND RETURN TO:**

HOF I Grantor Trust 1
60 Livingston Avenue
EP-MD-WS3D
St. Paul, MN 55107

## ASSIGNMENT OF MORTGAGE

KNOW THAT Loan Funder LLC. Series 22540, a Delaware limited liability company, having an address at 645 Madison Ave., Floor 19, New York, NY 10022 (the "Assignor"), in consideration of TEN AND 00/100 ($10.00) DOLLARS and other good and valuable consideration paid by HOF I Grantor Trust 1, having an address at 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 (the "Assignee"), hereby assigns unto the Assignee all of its rights, title and interest in and to that certain mortgage more particularly described on Exhibit A attached hereto and made a part hereof, affecting the premises more particularly described on Exhibit B attached hereto and made a part hereof (the "Premises") and known by the Loan Number 22540.

TOGETHER with that certain Promissory Note(s) dated August 5, 2021, made by PSB NY HOLDINGS LLC, in favor of Loan Funder LLC, Series 22540, in the total original principal amount of Three Hundred Fifty-two Thousand Dollars and 00/100 ($352,000.00) (the "Note"), and the moneys due and to grow due thereon with interest; TO HAVE AND TO HOLD the same unto the Assignee and to successors, legal representatives and assigns of the Assignee forever.

This Assignment of Mortgage (this "Assignment") is not subject to the requirements of Section two hundred seventy-five of the real Property Law because the Assignee is not acting as a nominee of the Mortgagor and the Mortgage continues to secure a bonafide obligation.

This Assignment is made in the ordinary course of business of the Assignor.

This Assignment is made without recourse to the Assignor and is made to and accepted by the Assignee without covenant, warranty or representation by the Assignor of any kind whatsoever, express or implied, provided, however, that the Assignor hereby represents that it (a) has not assigned, transferred, pledged, sold or hypothecated the Note and/or the Mortgage to any other person and (b) has the full right and power to sell and assign the same to the Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State in which the Premises are located. This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

[Balance of page is intentionally left blank]

The word "Assignor" or "Assignee" shall be construed as if it read "Assignor" or "Assignee" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment of Mortgage on the _21_ day of __May__, 2024.

ASSIGNOR:

**Loan Funder LLC, Series 22540**

Name: Lucas Sambrook
Title: Authorized Signatory

STATE OF _New York_        )
                                          )    ss.:
COUNTY OF _New York_    )

On the __21__ day of ___May___ in the year 2024 before me, the undersigned, personally appeared Lucas Sambrook, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within the instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

PATRICIA WONG
Notary Public, State of New York
Qualified in Queens County
Certificate in New York County
No. 01WO6027264
Commission Expires 06/28/20_27_

Exhibit A - Description of Mortgage

Mortgage in the principal amount of $352,000.00 given to PSB NY HOLDINGS LLC for Loan Funder LLC, Series 22540, dated 08/05/2021, and recorded or filed in the State of New York, City Register of New York City on 10/19/2021, as CRFN: 2021000410435.

This assignment is not subject to the requirements of Section 275 of the Real Property Law, because it is an assignment within the secondary mortgage market.


[Balance of page is intentionally left blank]

## Exhibit B - Legal Description of Premises

Loan Number: 22540

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Shad Creek Road (as now open and in use, 30.00 feet wide), distant 240.00 feet northerly from the corner formed by the intersection of the westerly side of Shad Creek Road and the northerly side of West Ninth Road (as now open and in use, 30.00 feet wide);

RUNNING THENCE westerly at right angles to the westerly side of Shad Creek Road, 168.07 feet;

THENCE northerly at right angles to the last mentioned line, 29.00 feet;

THENCE easterly at right angles to the last mentioned line, 168.07 feet to the westerly side of Shad Creek Road;

THENCE southerly along the westerly side of Shad Creek Road, 29.00 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:

Block 15308 Lot 42



2024091300574001002E7D5E

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 7 |
|---|---|

**Document ID:** 2024091300574001  **Document Date:** 09-10-2024  **Preparation Date:** 09-13-2024
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 5

| PRESENTER: | RETURN TO: |
|---|---|
| WIMBA TITLE AGENCY<br>645 MADISON AVE FL 19<br>NEW YORK, NY 10022-1010<br>KARTHICK.ARUMUGAM@WIMBATITLE.COM | HOF GRANTOR TRUST 1<br>60 LIVINGSTON AVENUE EP-MN-WS3D<br>ST. PAUL, MN 55107<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 15308 | 42 | Entire Lot | 721 SHAD CREEK ROAD |

**Property Type:** DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

**CRFN:**  2024000134663
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| LOAN FUNDER LLC, SERIES 22540<br>645 MADISON AVENUE 19TH FLOOR<br>NEW YORK, NY 10022 | HOF GRANTOR TRUST 1<br>60 LIVINGSTON AVENUE EP-MN-WS3D<br>ST. PAUL, MN 55107 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | |
| TASF: | $ | 0.00 | OF THE CITY REGISTER OF THE | |
| MTA: | $ | 0.00 | CITY OF NEW YORK | |
| NYCTA: | $ | 0.00 | Recorded/Filed      09-16-2024 11:28 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | **2024000241525** | |
| Recording Fee: | $ | 62.00 | | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | |

Loan Funder LLC, Series 22540

-to-

HOF Grantor Trust 1

The land affected by the within instrument Lies on
the Tax Map in the State of New York
County of Queens
Known as and by the street address:
721 Shad Creek Rd., Queens, NY 11693
Lot 42, Block 15308

**RECORD AND RETURN TO:**

HOF Grantor Trust 1
60 Livingston Avenue
EP-MD-WS3D
St. Paul, MN 55107

## CORRECTIVE ASSIGNMENT OF MORTGAGE

(This correction assignment of mortgage is being recorded to correct the assignee's information in the assignment of mortgage dated 05/21/2024 recorded on 05/28/2024 at CRFN 2024000134663)

KNOW THAT Loan Funder LLC, Series 22540, a Delaware limited liability company, having an address at 645 Madison Ave., Floor 19, New York, NY 10022 (the "Assignor"), in consideration of TEN AND 00/100 (S10.00) DOLLARS and other good and valuable consideration paid by HOF Grantor Trust 1, having an address at 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 (the "Assignee"), hereby assigns unto the Assignee all of its rights, title and interest in and to that certain mortgage more particularly described on Exhibit A attached hereto and made a part hereof, affecting the premises more particularly described on Exhibit B attached hereto and made a part hereof (the "Premises") and known by the Loan Number 22540.

TOGETHER with that certain Promissory Note(s) dated August 5, 2021, made by PSB NY HOLDINGS LLC, in favor of Loan Funder LLC, Series 22540, in the total original principal amount of Three Hundred Fifty-two Thousand Dollars and 00/100 ($352,000.00) (the "Note"), and the moneys due and to grow due thereon with interest; TO HAVE AND TO HOLD the same unto the Assignee and to successors, legal representatives and assigns of the Assignee forever.

This Assignment of Mortgage (this "Assignment") is not subject to the requirements of Section two hundred seventy-five of the real Property Law because the Assignee is not acting as a nominee of the Mortgagor and the Mortgage continues to secure a bonafide obligation.

This Assignment is made in the ordinary course of business of the Assignor.

This Assignment is made without recourse to the Assignor and is made to and accepted by the Assignee without covenant, warranty or representation by the Assignor of any kind whatsoever, express or implied, provided, however, that the Assignor hereby represents that it (a) has not assigned, transferred, pledged, sold or hypothecated the Note and/or the Mortgage to any other person and (b) has the full right and power to sell and assign the same to the Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State in which the Premises are located. This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

[Balance of page is intentionally left blank]

The word "Assignor" or "Assignee" shall be construed as if it read "Assignor" or "Assignee" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment of Mortgage on the __10__ day of ~~August~~ September, 2024.

ASSIGNOR:

**Loan Funder LLC, Series 22540**

Name:  Lucas Sambrook
Title: Authorized Signatory

STATE OF __NY__ )
                                    ) ss.:
COUNTY OF __New York__ )

On the ____10____ day of __September__ in the year 2024 before me, the undersigned, personally appeared Lucas Sambrook, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within the instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Jacklyn Ann Davin
Notary Public, State of New York
Reg. No. 01DA6435795
Qualified in Rockland County
Commission Expires 07/05/2026

### Exhibit A - Description of Mortgage

Mortgage in the principal amount of $135,000.00 given to PSB NY HOLDINGS LLC for Loan Funder LLC, Series 22540, dated 08/05/2021, and recorded or filed in the State of New York, City Register of New York City on 10/19/2021, as CRFN: 2021000410436.

This assignment is not subject to the requirements of Section 275 of the Real Property Law, because it is an assignment within the secondary mortgage market.

[Balance of page is intentionally left blank]

## Exhibit B - Legal Description of Premises

Loan Number: 22540

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Shad Creek Road (as now open and in use, 30.00 feet wide), distant 240.00 feet northerly from the corner formed by the intersection of the westerly side of Shad Creek Road and the northerly side of West Ninth Road (as now open and in use, 30.00 feet wide);

RUNNING THENCE westerly at right angles to the westerly side of Shad Creek Road, 168.07 feet;

THENCE northerly at right angles to the last mentioned line, 29.00 feet;

THENCE easterly at right angles to the last mentioned line, 168.07 feet to the westerly side of Shad Creek Road;

THENCE southerly along the westerly side of Shad Creek Road, 29.00 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:

Block 15308 Lot 42



NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

2024091300574002002E7D1A

## RECORDING AND ENDORSEMENT COVER PAGE                            PAGE 1 OF 7

| | |
|---|---|
| Document ID: 2024091300574002 | Document Date: 09-10-2024 | Preparation Date: 09-13-2024 |
| Document Type: ASSIGNMENT. MORTGAGE | |
| Document Page Count: 5 | |

| PRESENTER: | RETURN TO: |
|---|---|
| WIMBA TITLE AGENCY<br>645 MADISON AVE FL 19<br>NEW YORK, NY 10022-1010<br>KARTHICK.ARUMUGAM@WIMBATITLE.COM | HOF GRANTOR TRUST 1<br>60 LIVINGSTON AVENUE EP-MN-WS3D<br>ST. PAUL, MN 55107<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 15308 | 42 | Entire Lot | 721 SHAD CREEK ROAD |
| Property Type: | DWELLING ONLY - 2 FAMILY | | | |

### CROSS REFERENCE DATA

CRFN: 2024000134663
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| LOAN FUNDER LLC, SERIES 22540<br>645 MADISON AVENUE 19TH FLOOR<br>NEW YORK, NY 10022 | HOF GRANTOR TRUST 1<br>60 LIVINGSTON AVENUE EP-MN-WS3D<br>ST. PAUL, MN 55107 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | S | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | S | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | S | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | S | 0.00 | | $ | 0.00 |
| Spec (Additional): | S | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| TASF: | S | 0.00 | OF THE CITY REGISTER OF THE | | |
| MTA: | S | 0.00 | CITY OF NEW YORK | | |
| NYCTA: | S | 0.00 | Recorded/Filed        09-16-2024 11:28 | | |
| Additional MRT: | S | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | S | 0.00 | 2024000241526 | | |
| Recording Fee: | S | 62.00 | | | |
| Affidavit Fee: | S | 0.00 | City Register Official Signature | | |

Loan Funder LLC, Series 22540

-to-

HOF Grantor Trust 1

The land affected by the within instrument Lies on
the Tax Map in the State of New York
County of Queens
Known as and by the street address:
721 Shad Creek Rd., Queens, NY 11693
Lot 42, Block 15308

**RECORD AND RETURN TO:**

HOF Grantor Trust 1
60 Livingston Avenue
EP-MD-WS3D
St. Paul, MN 55107

## CORRECTIVE ASSIGNMENT OF MORTGAGE

(This correction assignment of mortgage is being recorded to correct the assignee's information in the assignment of mortgage dated 05/21/2024 recorded on 05/28/2024 at CRFN 2024000134663)

KNOW THAT Loan Funder LLC, Series 22540, a Delaware limited liability company, having an address at 645 Madison Ave., Floor 19, New York, NY 10022 (the "Assignor"), in consideration of TEN AND 00/100 ($10.00) DOLLARS and other good and valuable consideration paid by HOF Grantor Trust 1, having an address at 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 (the "Assignee"), hereby assigns unto the Assignee all of its rights, title and interest in and to that certain mortgage more particularly described on Exhibit A attached hereto and made a part hereof, affecting the premises more particularly described on Exhibit B attached hereto and made a part hereof (the "Premises") and known by the Loan Number 22540.

TOGETHER with that certain Promissory Note(s) dated August 5, 2021, made by PSB NY HOLDINGS LLC, in favor of Loan Funder LLC, Series 22540, in the total original principal amount of Three Hundred Fifty-two Thousand Dollars and 00/100 ($352,000.00) (the "Note"), and the moneys due and to grow due thereon with interest; TO HAVE AND TO HOLD the same unto the Assignee and to successors, legal representatives and assigns of the Assignee forever.

This Assignment of Mortgage (this "Assignment") is not subject to the requirements of Section two hundred seventy-five of the real Property Law because the Assignee is not acting as a nominee of the Mortgagor and the Mortgage continues to secure a bonafide obligation.

This Assignment is made in the ordinary course of business of the Assignor.

This Assignment is made without recourse to the Assignor and is made to and accepted by the Assignee without covenant, warranty or representation by the Assignor of any kind whatsoever, express or implied, provided, however, that the Assignor hereby represents that it (a) has not assigned, transferred, pledged, sold or hypothecated the Note and/or the Mortgage to any other person and (b) has the full right and power to sell and assign the same to the Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State in which the Premises are located. This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

[Balance of page is intentionally left blank]

The word "Assignor" or "Assignee" shall be construed as if it read "Assignor" or "Assignee" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment of Mortgage on the _6_ day of _September_, 2024.

ASSIGNOR:

**Loan Funder LLC, Series 22540**

Name:  Lucas Sambrook
Title: Authorized Signatory


STATE OF _New York_        )
                          )    ss.:
COUNTY OF _New York_       )

On the _6_ day of _September_ in the year 2024 before me, the undersigned, personally appeared Lucas Sambrook, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within the instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

Jacklyn Ann Davin
Notary Public, State of New York
Reg. No. 01DA6435795
Qualified in Rockland County
Commission Expires 07/05/2026

### Exhibit A - Description of Mortgage

Mortgage in the principal amount of $352,000.00 given to PSB NY HOLDINGS LLC for Loan Funder LLC, Series 22540, dated 08/05/2021, and recorded or filed in the State of New York, City Register of New York City on 10/19/2021, as CRFN: 2021000410435.

This assignment is not subject to the requirements of Section 275 of the Real Property Law, because it is an assignment within the secondary mortgage market.

[Balance of page is intentionally left blank]

## Exhibit B - Legal Description of Premises

Loan Number: 22540

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Shad Creek Road (as now open and in use, 30.00 feet wide), distant 240.00 feet northerly from the corner formed by the intersection of the westerly side of Shad Creek Road and the northerly side of West Ninth Road (as now open and in use, 30.00 feet wide);

RUNNING THENCE westerly at right angles to the westerly side of Shad Creek Road, 168.07 feet;

THENCE northerly at right angles to the last mentioned line, 29.00 feet;

THENCE easterly at right angles to the last mentioned line, 168.07 feet to the westerly side of Shad Creek Road;

THENCE southerly along the westerly side of Shad Creek Road, 29.00 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:

Block 15308 Lot 42